UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x

GUS CHRISTOFOROU and RAMONA ALCALA,

                Plaintiffs,

   -against-

                                04 CV 08403(KMW)
CADMAN PLAZA NORTH, INC.,         OPINION & ORDER

                Defendant.

----------------------------------x
WOOD, U.S.D.J.:

    Plaintiffs Gus Christoforou ("Christoforou") and Ramona
Alcala ("Alcala") (collectively "Plaintiffs") bring this civil
rights and housing discrimination action against Defendant Cadman
Plaza North, Inc. ("Defendant").  A visiting judge conducted a
bench trial on November 2, 2007.  After Plaintiffs presented
their case in chief, Defendant moved, pursuant to Federal Rule of
Civil Procedure ("Rule") 52(c), for judgment on partial findings.
The Court granted Defendant's motion and dismissed all of
Plaintiffs' claims (the "November 2007 ruling").

    Now pending before the undersigned are: (1) Plaintiffs'
motions, pursuant to Local Rule of the United States District
Courts for the Southern and Eastern Districts of New York ("Local
Rule") 6.3, Rule 52(b), and Rule 59(e), for reconsideration of
Defendant's motion for judgment on partial findings, amended or
additional findings, and/or to alter or amend the judgment; (2)
Plaintiffs' motion, pursuant to Rule 59(a) and Rule 61, for a new

trial; and (3) Plaintiffs' motion, pursuant to Rule 15, to amend the pleadings.[1]

Having reviewed the trial record in light of the instant motions, the Court concludes that Plaintiffs' motion for reconsideration is meritorious and that the Court must reconsider Defendant's motion for judgment on partial findings.  The Court made two critical mistakes in its November 2007 ruling: the Court did not state in sufficient detail its findings of facts and conclusions of law, and it incorrectly applied controlling law to the available facts.

Upon careful reconsideration of Defendant's motion for judgment on partial findings, however, the Court finds, for different reasons, that all of Plaintiffs' claims fail.

In this Order, the Court clarifies for the record – and for the benefit of the litigants – why the Court's November 2007 ruling was flawed, and why, upon reconsideration of Defendant's motion for judgment on partial findings, Plaintiffs' claims should nonetheless be dismissed.

For the reasons stated above and below, the Court (1) GRANTS Plaintiffs' motion for reconsideration; (2) upon reconsideration, GRANTS Defendant's motion for judgment on partial findings; (3)

---

[1] Plaintiffs state that they are also bringing a motion, pursuant to Rule 60, for relief from a judgment or order. Plaintiffs do not brief this argument or present any evidence in support of it.  Accordingly, the Court DENIES Plaintiffs any relief pursuant to Rule 60.

DENIES Plaintiffs' motion for a new trial; and (4) DENIES
Plaintiffs' motion to amend.

I.  Background

    A.  Summary of the Action

        1.  Plaintiffs' Allegations

At the time of the events underlying this action,
Plaintiffs, Christoforou and Alcala, were the parents of a two-
year-old child.  Plaintiffs were not married to one another, and
the name of the father, Christoforou, was not on the child's
birth certificate.  (Compl. ¶ 4.)

Alcala is of Hispanic origin.  (Compl. ¶ 4.)

Defendant is the fee owner of 140 Cadman Plaza West,
Brooklyn, New York ("Defendant's building").  Defendant's
building is a government-subsidized, middle-income housing
cooperative, run pursuant to New York's Mitchell-Lama subsidized
housing program and subject to the supervision of the New York
City Department of Housing, Preservation, and Development
("HPD").  (Compl. ¶ 5; Pls.' Mem. of Law in Supp. of Am. Mot.
[sic] Post-Trial Mot. ("Supp. Mem.") 2-4.)

Prior to January 2004, Christoforou applied to purchase a
two-bedroom apartment in Defendant's building.  Christoforou's
original application stated that he intended to live with his
mother in the apartment.  (Compl. ¶ 6.)

In January 2004, Defendant informed Christoforou that his

name was at the top of the waiting list and that several apartments were available. (Pls.' Trial Prep. Mem. 1; Compl. ¶ 6.) At that point, Christoforou told Defendant that he intended to live with Alcala and their child in the apartment. (Compl. ¶ 6.)

In March 2004, Defendant informed Christoforou that his application for an apartment had been rejected because Alcala's address, as listed on her tax returns, was different than Christoforou's, and because there was no father's name on their child's birth certificate. (Compl. ¶ 8.)

Based on these underlying allegations, Plaintiffs claim that Defendant rejected Christoforou for legally impermissible reasons, namely, their familial status and Alcala's race and national origin.[2]  (Compl. ¶ 9.)

    2.  Defenses

Defendant claims that its denial of Christoforou's application was based on nondiscriminatory reasons, and was in accordance with the rules governing the purchase and rental of Mitchell-Lama apartments, 28 Rules of the City of New York ("R.C.N.Y.") § 3-01 et seq.  (Joint Pre-Trial Order 2.) Specifically, Defendant claims that Christoforou's application was denied because his application and its supporting

-------------------

    [2] See infra section II.A. for a full discussion of the claims at issue in this case.

documentation did not establish that Christoforou, Alcala, and their child were "a family unit" as required by § 3-02(p)(2)(ii)(B). (Def. Cadman Plaza North's Pretrial Submission 2.)  In addition, Defendant maintains that even if its determination that Plaintiffs were not a "family unit" was improper, Defendant would nonetheless have denied Christoforou's application because of the income level he derived from his ownership of multiple residential buildings in the New York area.[3] (Def. Cadman Plaza North's Pretrial Submission 2.)

    B.   Procedural History

    Plaintiffs commenced this action in October 2004.  The case proceeded through discovery; no motions to dismiss were filed.

    At the conclusion of discovery, Plaintiffs indicated their intention to file a motion for summary judgment.  The Court directed the parties to first file statements of facts, pursuant to Local Rule 56.1.  The parties submitted these Local Rule 56.1 Statements.

    By order dated April 6, 2006 (the "Court's April 6, 2006

---

    [3] Defendant contends that it separately rejected two different applications from Christoforou.  Defendant claims it rejected Christoforou's original application because of his failure to show that he, Alcala, and their child were a "family unit," but that in the alternative, it would have rejected him because of his income level.  Defendant claims it rejected a second application from Christoforou, dated March 17, 2004, because of Christoforou's income level.  (Def. Cadman Plaza North's Pretrial Submission 2.)  Whether Defendant rejected one or two of Christoforou's applications is not relevant to the Court's analysis in this Order.

Order"), the Court found that the parties' Local Rule 56.1
Statements indicated that there were genuine issues of material
fact in dispute pertaining to, <u>inter alia</u>, whether Christoforou
was qualified for the apartment, why Christoforou was rejected,
and whether Defendant is a state actor.  The Court recommended
that no motion for summary judgment be filed.  The parties did
not file motions for summary judgment.

After the filing of a Joint Pre-Trial Order and other pre-
trial submissions, a bench trial was held before this Court on
November 2, 2007.[4]

At trial, Plaintiffs' counsel first called Christoforou to
the stand.  Christoforou testified about applying for an
apartment in Defendant's building, his subsequent rejection, and
his ownership of various residential buildings.  Plaintiffs'
counsel introduced no exhibits into evidence during direct
examination of Christoforou.  Defendant then cross-examined
Christoforou, primarily as to his ownership of the buildings and
his income.  Defendant's counsel introduced no exhibits into
evidence during cross-examination of Christoforou.

Plaintiffs next attempted to call Alcala to the stand.  She,
however, required a Spanish interpreter, and Plaintiffs' attorney
had neglected to inform the Court that an interpreter was

---

[4] On September 11, 2007, the case was reassigned to a
visiting judge for the purposes of trial.  After the conclusion
of the bench trial, the case was reassigned to the undersigned.

necessary.  Plaintiffs' counsel asked the Court whether an interpreter was available, and in response, the Court noted that in a civil matter, it was the responsibility of counsel to ensure that an interpreter was available.  The Court stated "[i]f you don't have a witness available for trial, you don't have a witness."  (Tr. 41:2-3.)  Plaintiffs abandoned their attempt to call Alcala to the stand.

Plaintiffs then indicated their intention to call Elaine Smith, a representative of HPD, to the stand.  She, however, was not present in the courtroom.  Plaintiffs' counsel stated that he had attempted to subpoena her on the day before trial, but admitted there was no affidavit of service on file.  The Court stated, "If you don't have a witness, then you rest.  You rest?" Plaintiffs' counsel replied, "If your Honor didn't sign my order to show cause to compel the attendance of Elaine Smith, then we have no further witnesses and we rest, yes, your Honor."  (Tr. 42:25-43:04.)

After Plaintiffs rested, Defendant's counsel moved to dismiss "the case for failure of plaintiff to establish a prima facie case based on that they are trying to prove housing discrimination."  (Tr. 43:12-15.)

After hearing arguments from both sides, the Court granted Defendant's motion.  In ruling, the Court stated only the following:

7

> I have to decide the case upon the motion of the
> evidence that's before me.  The evidence before me
> shows that the plaintiff is not within a protective
> class, no evidence in that regard.  The evidence is
> clear as to what's been presented, that there was no
> discrimination involved in the rejection and that the
> rejection was based on legitimate business concerns
> and, therefore, there is no evidence to rebut that and
> the plaintiff has failed to sustain his burden of
> proof.
> Therefore, the case is dismissed and judgment is
> rendered for the defendant.

(Tr. 47:5-15.)

Judgment was entered by separate document that same day

(D.E. 47).  The document stated that the Court had granted

Defendant's Rule 52(c) motion to dismiss and that accordingly,

the Complaint was dismissed and judgment entered in favor of

Defendant.

Plaintiffs now bring these motions asking the Court to,

inter alia, reconsider its November 2007 ruling.  For the reasons

stated below, the Court grants Plaintiffs' motion for

reconsideration.  Upon reconsideration, however, the Court again

grants Defendant's motion for judgment on partial findings, and

accordingly denies Plaintiffs' motions for a new trial and to

amend the Complaint.

C.  Evidence Introduced at Trial

The Court now summarizes the evidence introduced onto the

record at trial, which, along with the facts stipulated to in the

Joint Pre-Trial Order, constitutes the only evidence proper for

consideration by the Court in deciding the instant motions.

8

1.  <u>Christoforou's Application</u>

Potentially as early as 1992, Christoforou applied for an apartment in Defendant's building.  (Tr. 3:25-4:1; 5:23-24.)  In his application, Christoforou stated that he intended to live in the apartment with his mother.  (Tr. 5:1-7.)

In or around September 2003, Defendant asked Christoforou to fill out an updated application, including the names and income levels of the persons who would be residing in the apartment. (Tr. 4:7-14.)  In his updated application, Christoforou stated that he intended to live in the apartment with Alcala and their son.  (Tr. 5:8-15.)

In or around January 2004, Christoforou received a telephone call from Rhona Nelson ("Nelson"), Defendant's assistant manager. Nelson asked Christoforou to submit tax returns and other documents to supplement his application.  Christoforou submitted several years' tax returns for both himself and Alcala.  (Tr. 7:12-8:25.)  Christoforou believes he also submitted telephone bills, gas bills, and additional materials.  (Tr. 6:10-14; 7:13-8:6.)

In either January or February 2004, Christoforou was invited to look at apartments in Defendant's building.  Christoforou and Alcala viewed several two-bedroom apartments.  Christoforou informed Nelson that they were interested in one of them.  Nelson told him she would "let him know."  (Tr. 9:2-10:2.)

9

2.   <u>Rejection</u>

In either February or March 2004, Nelson called Christoforou and told him that his application had been rejected. Christoforou asked the reason for his rejection, and Nelson replied that it was because his "taxes and [Alcala's] taxes, the addresses are different" and because their child's "birth certificate did not show the father's name." (Tr. 10:6-21.) Christoforou testified that Nelson also stated, in reference to Alcala, "we don't even know if you picked this woman up off the street." (Tr. 12:14-15.)

Christoforou informed Nelson that he could remedy the stated problems with his application, and that he could prove that he, Alcala, and their child were a "family."  Nelson told Christoforou to bring her the requisite documentation.  (Tr. 10:25-11:2; 12:17-19.)

During the next several months, Christoforou had a paternity test performed that confirmed he was the father of Alcala's child. Christoforou also had a second birth certificate issued for his son, naming Christoforou as the father.  Alcala had her address on various legal documents changed to Christoforou's address.  (Tr. 11:4-23.)

In June 2004, Christoforou submitted these updated documents to Nelson.  Nelson then informed him that the apartment was no longer available. (Tr. 12:20-13:1.)

3.   <u>Income and Ownership of Residential Buildings</u>

Christoforou also testified, at some length, about three residential properties that he owns in corporate names: a two-family house, a five-family house with a barber shop, and a four-family house with an optometrist's office.  Christoforou testified that he received, respectively, $22,800, $100,000, and $90,000 a year in rent from these properties, and owed, respectively, $250,000, $560,000, and $130,000 in mortgages. (Tr. 15-23.)

On cross-examination, Christoforou admitted being aware that Mitchell-Lama apartments are designated for middle-income residents, and that accordingly, income is an important component of eligibility.  Christoforou also confirmed that he stated on his application that his 2004 annual income was only $30,000. When asked why he did not submit his corporate tax returns and Schedule K-1 forms with his application, Christoforou testified that Nelson told him she would ask him for those forms if they were needed.  When asked why he left unanswered on his application the question of whether he had additional sources of income, Christoforou testified that he did not see the question. (Tr. 24-40.)

II.  <u>Analysis</u>

A.  <u>Claims Before the Court</u>

Before resolving the pending motions, the Court must first

address the question of which claims were before the Court at
trial.

    In their briefing on the instant motions, Plaintiffs argue
that in addition to the (1) 42 U.S.C. § 1981 ("§ 1981") race
discrimination claim; (2) 42 U.S.C. § 3604 ("§ 3604") familial
status and national origin housing discrimination claims; and (3)
New York Real Property Law § 235(f) ("§ 235(f)") claim asserted
by Plaintiffs in the Joint Pre-Trial Order, the following claims,
which were alleged neither in the Complaint nor in the Joint Pre-
Trial Order, were nonetheless before the Court at trial because
Defendant implicitly consented to their consideration: (4) a 42
U.S.C. § 1983 ("§ 1983") civil rights claim;[5] (5) New York State
Human Rights Law ("SHRL") and New York City Human Rights Law
("CHRL") marital status housing discrimination claims; and (6)
SHRL and CHRL familial status housing discrimination claims
(collectively "additional claims"). (Supp. Mem. 16, 22.)  The

_____

        [5] Although Plaintiffs mention § 1983 in their Complaint,
they do not clearly assert a <u>claim</u> pursuant to § 1983.  In
describing their first cause of action, pursuant to "§ 1981 et
seq.," Plaintiffs allege that "it is defendant's custom and usage
as defined at 42 USC § 1983 to deny housing due to unlawful
reasons, impairing plaintiffs' right to make and enforce
contracts and in violation of the equal protection of the
Constitution."
        Had Plaintiffs continued to make this hybrid § 1981/§ 1983
allegation in the Joint Pre-Trial Order or in their Trial
Preparation Memorandum, the Court would likely have construed the
allegation liberally as raising claims pursuant to both sections.
Plaintiffs, however, never again mentioned § 1983.  Accordingly,
as further discussed below, the Court finds that a § 1983 claim
was not before the Court at trial.

Court disagrees, and finds that Defendant did not implicitly

consent to trial of the additional claims.  Accordingly, the

Court rules that no claims or defenses other than those asserted

in the Joint Pre-Trial Order will be deemed before the Court at

trial, or considered by the Court in this Order.

       1.  <u>Legal Standard</u>

    Federal Rule of Civil Procedure 15(b)(2) provides that

"[w]hen an issue not raised by the pleadings is tried by the

parties' express or implied consent, it must be treated in all

respects as if raised in the pleadings."

    Consent to try claims may be implied when an issue not

raised in the pleadings is either addressed in an ongoing way by

all parties prior to trial, or is introduced at trial without

objection by the opposing party.  <u>See, e.g.</u>, <u>Luria Bros. & Co. v.</u>

<u>Alliance Assurance Co.</u>, 780 F.2d 1082, 1089 (2d Cir. 1986)

("Usually, consent may be implied from failure to object at trial

to the introduction of evidence relevant to the unpled issue.");

<u>Isik Jewelry v. Mars Media, Inc.</u>, 418 F. Supp. 2d 112, 131

(E.D.N.Y. 2005) ("Rule 15(b) is satisfied where the claim . . .

[is] introduced outside the complaint . . . [for instance] . . .

in a pretrial memorandum – and then treated by the opposing party

as having been pleaded,[] through his effective engagement of the

claim . . . .") (internal quotations and citations omitted).

    The Second Circuit has cautioned, however, that courts

should be cautious in inferring consent under Rule 15(b),
"particularly in light of the notice demands of procedural due
process." Grand Light & Supply Co. v. Honeywell, Inc., 771 F.2d
672, 681 (2d Cir. 1985) (internal quotations and citations
omitted). Accordingly, a party's failure to object to the
raising of an unpled issue can be read as consent only if the
issue was raised in a sufficiently clear and unambiguous way.
See Luria Bros. & Co., 780 F.2d at 1089-1090 (implied consent
first requires "awareness that the issue has been introduced").

Absent the specific circumstances that permit consent to be
inferred from conduct, it is the pleadings and the Pre-Trial
Order that ultimately define the scope of the action. "[I]t is
an established procedural principle that a party's failure to
include a legal theory or defense in the pre-trial order results
in its subsequent abandonment or waiver." Kozera v. Int'l Bhd.
of Elec. Workers, AFL-CIO, 230 F. Supp. 2d 413, 416 n.3 (S.D.N.Y.
2002).

2.  Application

Plaintiffs argue that the additional claims were before the
Court at trial because there was an "understanding" among the
parties that the additional claims were to be tried. (Supp. Mem.
16.) The only evidence Plaintiffs cite of this understanding is
the Court's April 6, 2006 Order, which states that the parties'
Local Rule 56.1 Statements indicated that material facts were in

14

dispute as to whether Defendant is a state actor and whether Plaintiffs were discriminated against because of their marital status.  Plaintiffs argue, in effect, that because Defendant responded to facts in Plaintiffs' Local Rule 56.1 Statement that could relate to the additional claims, Defendant implicitly consented to the Court's consideration of the additional claims at trial.[6]

The Court disagrees.  Because the additional claims were raised unclearly, there is insufficient evidence that Defendant understood that Plaintiffs were attempting to raise them. Plaintiffs' pre-trial references to the additional claims were ambiguous at best.  For instance, although Plaintiffs' Local Rule 56.1 Statement states that Defendant "is operated by the rules of the NYC HPD" and "is a 'state actor,'" Plaintiffs do not allege that this conclusion supports a finding of liability pursuant to § 1983.  Furthermore, any facts asserted in Plaintiffs' Local Rule 56.1 Statement or testified to at trial that could be construed as raising the unalleged marital status discrimination claims are equally relevant to the alleged familial status discrimination claim.  Therefore, the introduction of this evidence did not put Defendant on notice that Plaintiffs were attempting to assert any claims other than those alleged in the

---

[6] Plaintiffs introduce no evidence to support their argument that SHRL and CHRL familial status housing discrimination claims were before the Court.

Complaint.  Implied consent can be inferred only from a <u>knowing</u>

failure to object.  Under the circumstances described above,

Defendant's failure to object cannot be read as implicit

consent.[7]

4.  <u>Conclusion</u>

Accordingly, the Court finds that the only claims before the

Court at trial were those enumerated in the Joint Pre-Trial

Order: (1) a claim for race discrimination, pursuant to § 1981;

(2) claims of housing discrimination based on familial status and

national origin, pursuant to § 3604; and (3) a New York state law

claim pursuant to § 235(f).[8]

---

[7] The Court also notes that in a April 26, 2006 Order, the
Court <u>sua</u> <u>sponte</u> suggested to Plaintiffs that they may want to
move for leave to amend their Complaint.  Plaintiffs did not do
so.

[8] Even assuming, <u>arquendo</u>, that these additional claims were
before the Court at trial, the Court would find, upon
reconsideration, that they should have been dismissed.
    With regard to the § 1983 claim, a plaintiff asserting a
violation of her constitutional rights under § 1983 is required
to show state action.  <u>Tancredi v. Metro. Life Ins. Co.</u>, 316 F.3d
308, 312 (2d Cir. 2003).  In order to satisfy the state action
requirement when the defendant is a private entity, the allegedly
unconstitutional conduct must be fairly attributable to the
state.  <u>Id.</u>  At trial, Plaintiffs introduced no evidence that
Defendant's decision to reject Christoforou's application for
housing was fairly attributable to the state.  The Court would
therefore grant Defendant's motion for judgment on partial
findings on Plaintiffs' § 1983 claim.
    With regard to the SHRL and CHRL familial and marital status
discrimination claims, they would fail for the same reason that
Plaintiffs' other discrimination claims fail, <u>see</u> <u>infra</u> section
II.C.2.a.
    The Court notes that the marital status discrimination
claims would also fail for a more fundamental reason.  The New

16

B.   Motion for Reconsideration, Motion to Amend or Make

Additional Findings, and Motion to Amend Judgment[9]

Having defined the proper scope of this action, the Court

now turns to Plaintiffs' motion for reconsideration.[10]   For the

_____

York Court of Appeals has held that the prohibitions against
marital status discrimination under SHRL and CHRL prohibit
discrimination only on the basis of marital status, i.e.
discrimination based on the mere fact that a person is married or
unmarried.   These laws do not prohibit discrimination on the
basis of conduct, i.e. discrimination based on with whom a person
wishes to live.   In other words, these laws do not forbid a
landlord from denying an application for housing because the
applicant intends to live with someone to whom she is not
married.   See Levin v. Yeshiva Univ., 754 N.E.2d 1099, 1102 (N.Y.
2001).   Thus, even if Plaintiffs established at trial that
Defendant refused to sell to them because they were unmarried
cohabitants, Plaintiffs still would not have established grounds
for relief.   The protections of these laws "do not extend to
complainants in these circumstances because the denial of housing
to a cohabitating couple does not constitute unlawful
discrimination on the basis of 'marital status.'"   Hoy v.
Mercado, 698 N.Y.S.2d 384 (App. Div. 1999); see also Hudson View
Prop. v. Weiss, 450 N.E.2d 234 (N.Y. 1983).
     The Court would therefore grant Defendant's motion for
judgment on partial findings on Plaintiffs' SHRL and CHRL
familial and marital status discrimination claims.


     [9] Motions pursuant to Local Rule 6.3, Rule 52(b), Rule
59(a), and Rule 59(e) must be filed no later than 10 days after
the entry of judgment.   The Court notes for the record that
Plaintiffs have fulfilled this requirement.
     Plaintiffs first filed a motion for a new trial on November
15, 2007, less than 10 days - calculated according to Rule 6(a) -
after November 2, 2007, the date judgment was entered.   By order
dated November 19, 2007, the Court granted Plaintiffs until
December 3, 2007 to amend or refile the motion.   Plaintiffs
refiled the instant motions on November 19, 2007.

     [10] The standards governing motions for reconsideration,
motions to amend or make additional findings, and motions to
alter or amend a judgment are the same, see infra for discussion
of standard.   Resgnet.com, Inc. v. Lansa, Inc., No. 01 Civ. 3578

reasons stated below, the Court concludes that reconsideration of
Defendant's motion for judgment on partial findings is warranted.

### 1.   Legal Standard

The standard for a motion for reconsideration is strict, and
reconsideration "will generally be denied unless the moving party
can point to <u>controlling decisions or data that the court</u>
<u>overlooked</u> - matters, in other words, that might reasonably be
expected to alter the conclusion reached by the court." <u>Shrader</u>
<u>v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995) (emphasis
added).  Reconsideration should not be granted where the moving
party seeks solely to relitigate an issue already decided; in
addition, the moving party may not "advance new facts, issues or
arguments not previously presented to the Court." <u>Shamis v.</u>
<u>Ambassador Factors Corp.</u>, 187 F.R.D. 148, 151 (S.D.N.Y. 1999)
(internal quotations and citations omitted).  The decision to
grant or deny the motion is within the sound discretion of the
district court.  <u>See Devlin v. Transp. Commc'n Int'l Union</u>, 175
F.3d 121, 132 (2d Cir. 1999).

### 2.   Application

Plaintiffs present two primary arguments in support of their

---

(RWS), 2008 WL 4376367, at *2 (S.D.N.Y. Sept. 25, 2008); <u>Wechsler</u>
<u>v. Hunt Health Sys., Ltd.</u>, No. 94 Civ. 8294 (PKL), 2004 WL
2210261, at *2 (S.D.N.Y. Sept. 30, 2004); <u>4200 Ave. K LLC v.</u>
<u>Fishman</u>, No. 00 Civ. 8814 (RLC), 2001 WL 498402, at *1 (S.D.N.Y.
May 10, 2001).  Because the legal standards are the same and the
relief requested duplicative, the Court addresses the motions
collectively.

motion for reconsideration.[11]  First, they argue that the Court overlooked controlling law and data in holding (1) that Plaintiffs were not members of a protected class; and (2) that Defendant rejected Plaintiffs for a legitimate, nondiscriminatory reason.  Second, Plaintiffs argue that the Court's November 2007 ruling did not "find the facts specially and state its conclusions of law separately" as required by Rule 52(a).  The Court agrees, and finds that both of these reasons support reconsideration of Defendant's motion for judgment on partial findings.

---

[11] Plaintiffs also argue that the Court should reconsider Defendant's motion for judgment on partial findings because (1) the Court dismissed Plaintiffs' entire case even though Defendant moved to dismiss only the housing discrimination claims; and (2) Plaintiffs did not have the requisite opportunity to be heard on the issues of protected class and legitimate, non-discriminatory reason.  (Supp. Mem. 12, 22.)  These arguments are without merit.

As to the first argument, a court may enter judgment on partial findings <u>sua</u> <u>sponte</u>.  9 James Wm. Moore et al., Moore's Federal Practice ¶ 52.50[1] (3d ed. 2008) ("The court may enter judgment upon its own motion or following a motion by the party."); <u>see</u> <u>also</u> Fed. R. Civ. P. 52(c).  Accordingly, the Court was justified in dismissing any claims it believed should be dismissed, no matter which claims Defendant intended to challenge.

As to the second argument, Plaintiffs <u>did</u> have the opportunity to be heard.  Plaintiffs had the opportunity in their case in chief to introduce relevant evidence in support of their <u>prima</u> <u>facie</u> case and also to present evidence rebutting any likely defenses.  Plaintiffs' suggestion that they did not have appropriate notice that Defendant would assert a legitimate non-discriminatory reason for rejecting Plaintiffs is belied by the Joint Pre-Trial Order, which specifically states "[t]he Defendant maintains that its denial of the Plaintiff's application was based on non-discriminatory reasons and was in accordance with Chapter 3 of Title 28 of the Rules of the City of New York."

19

a.   <u>Overlooked Controlling Law or Data</u>

Plaintiffs argue that the Court overlooked controlling law and data in ruling on the issues of protected class and Defendant's alleged legitimate, non-discriminatory reason. Plaintiffs are correct.

i.   <u>Protected Class</u>

In its November 2007 ruling, the Court first addressed whether Plaintiffs had established that they were members of a protected class.  The Court held, "[t]he evidence before me shows that the plaintiff is not within a protective class [sic], no evidence in that regard."  (Tr. 47:6-8.)

The evidence before the Court at trial included Christoforou's testimony that Plaintiffs were parents of a child under 18.[12]  Under § 3604, "families with children [under 18]"

---

[12] Plaintiffs also argue that the law of the case established that Plaintiffs were members of a protected class. According to Plaintiffs, the Court's April 6, 2006 Order "recognized" that Plaintiffs were within a protected class. Plaintiffs are wrong on this point for numerous reasons.

First, the Court's April 6, 2006 Order does not directly address the issue of protected class.  Second, to the extent that the Court's April 6, 2006 Order <u>indirectly</u> addresses the issue of protected class, it merely describes the parties' Local Rule 56.1 Statements, and does not decide a question of law, or establish law of the case.  <u>See</u> <u>DiLaura v. Power Auth.</u>, 982 F.2d 73, 76 (2d Cir. 1992) (the law of the case doctrine arises when "a court decides upon a rule of law").  Finally, even assuming, <u>arguendo</u>, that the Court's April 6, 2006 Order could be construed as law of the case, the law of the case doctrine is "discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment."  <u>Pescatore v. Pan Am. World Airways, Inc.</u>, 97 F.3d 1, 7-8 (2d Cir. 1996) (internal quotations and citations omitted).

are a protected class.  Khalil v. Farash Corp., 277 Fed. Appx. 81, 83 (2d Cir. 2008); see 42 U.S.C. § 3602(k) (defining familial status as "one or more individuals (who have not attained the age of 18 years) being domiciled with . . . . a parent or another person having legal custody of such individual or individuals.").

The Court therefore overlooked material testimony in making its ruling on the issue of protected class.[13]

ii.  Legitimate, non-discriminatory reason

In its November 2007 ruling, the Court secondly addressed whether Defendant had established a legitimate, nondiscriminatory reason for its rejection of Christoforou.  The Court held, "[t]he evidence is clear as to what's been presented, that there was no discrimination involved in the rejection and that the rejection was based on legitimate business concerns and, therefore, there is no evidence to rebut that and the plaintiff has failed to sustain his burden of proof." (Tr. 47:8-13.)

Plaintiffs argue that the Court overlooked controlling law and data in making its ruling on Defendant's legitimate, non-discriminatory reason because there was insufficient evidence

---

[13] Plaintiffs do not argue, and the Court therefore does not consider, whether the Court's ruling on protected class also overlooked law or fact as applied to Plaintiffs' race and national origin discrimination claims.  The Court notes, however, that Defendant never – either prior to or during trial – contested Plaintiffs' representation in their Complaint that Alcala was of Hispanic origin and a member of a protected class because of her race and national origin.

introduced at trial to support the Court's conclusion.  (Supp.
Mem. 17-18.)  The Court agrees.

The Court did not state in its November 2007 ruling what
legitimate non-discriminatory reason it found for Defendant's
rejection of Christoforou's application.  The pleadings and the
trial record, however, reflect only two potential reasons: either
(1) that Christoforou, Alcala, and their child did not satisfy
the "family unit" requirement of § 3-02(p) (the "family unit
defense"); or (2) that Christoforou's actual income exceeded the
income eligibility requirements for the Mitchell-Lama program
(the "income defense").  Neither of these reasons were
established at trial.

(a).  <u>Family Unit Defense</u>

At numerous points throughout this litigation, Defendant has
alleged that its rejection of Christoforou was in accordance with
the "family unit" requirement of § 3-02(p).  (<u>See, e.g.</u>, Def.
Cadman Plaza North's Pretrial Submission 2.)  Defendant claims
that because Christoforou's and Alcala's addresses were different
on their tax returns and because there was no father's name on
their child's birth certificate, Christoforou's application did
not sufficiently establish that Christoforou, Alcala, and their
child were a "family unit."  Defendant insists that it rejected
Plaintiffs for this reason, and not for any legally impermissible
reason.

At trial, however, Defendant never put on its case in chief, and consequently, Defendant did not raise the family unit defense, nor establish that Plaintiffs failed to meet the requirements of § 3-02(p).[14]  Defendant's family unit defense was therefore insufficiently established at trial to justify dismissal of Plaintiffs' claims.

(b).  <u>Income Defense</u>

The second potential, legitimate, non-discriminatory reason for Defendant's decision relates to whether Christoforou's income, from his considerable real estate holdings, made him ineligible for Mitchell-Lama subsidized housing.

Again, Defendant's income defense was insufficiently established at trial to justify dismissal of Plaintiffs' claims. Christoforou's income was discussed on direct and cross examination, but no evidence was introduced concerning Mitchell-

---

[14] In addition, the Court notes that Defendant's family unit defense is impeached by the plain language of the rule to which Defendant cites.  Defendant claims that under § 3-02(p) only individuals that constitute a "family unit" are eligible to live in Mitchell-Lama housing.  Section 3-02(p), however, does not address <u>eligibility</u> for tenancy; section 3-02(p) addresses which co-occupants may <u>succeed</u> to the rights of tenants who decide to vacate an apartment.  28 R.C.N.Y. § 3-02(p) ("[t]he rights of family members of a tenant/cooperator who have requested to remain as the lawful tenant/cooperator are governed by policies and procedures set forth in this subdivision"); <u>see also</u> <u>Alfred v. Barrios-Paoli</u>, 676 N.Y.S.2d 185, 186 (App. Div. 1998) (to "succeed to the leasehold rights of a Mitchell-Lama apartment, one must be a 'family member' as defined in Rules of the City of New York, tit. 28, § 3-02(p)(2)(ii)").

Lama income limits.[15]  Accordingly, it was never established the

Christoforou's income made him ineligible.[16]

Because the evidence introduced at trial did not support its

conclusion, the Court overlooked controlling law and data in

ruling on the issue of Defendant's alleged legitimate, non-

---

[15] At no time prior to or during trial did Defendant (or for
that matter, Plaintiffs, see infra section II.C.2.a.ii.) ever
submit evidence of the income requirements governing eligibility
for Mitchell-Lama housing in 2004.  Similarly, the parties did
not inform the Court of how such income requirements are
established or where they can be obtained.  The Court is
accordingly unable to determine whether Christoforou's income
made him ineligible.
    Furthermore, because the source of the requirements, and
whether they are in any way contested, is unknown, taking sua
sponte judicial notice of them – whatever they are, wherever they
can be found – would be inappropriate, and the Court accordingly
declines to do so.  See 60 Am. Jur. Proof of Facts 3d § 175.13
(2008) ("[a]s to federal courts, the general Rule is that
judicial notice of [state administrative regulations, private
acts, and local ordinances and regulations] is within the
discretion of the court and . . . not mandatory."); see also id.
at § 175.34 (at minimum, an attorney should "make a proper
citation" to any state law of which the attorney wants the court
to take judicial notice); Cf. U.S. v. Judge, 846 F.2d 274, 276
(5th Cir. 1988) (declining to take judicial notice of Drug
Enforcement Administration regulations because the government
selectively reprinted portions of the manual, leaving the court
unaware of other potentially relevant portions, and making
"application of the appended provisions to the facts presented .
. . subject to reasonable dispute.").

[16] Defendant's income defense may also be inadequate for a
more fundamental reason – the record suggests that Defendant did
not realize that Christoforou's income allegedly rendered him
ineligible until after Defendant had already rejected
Christoforou, see Tr. 45:17-46:9.  Cf. McKennon v. Nashville
Banner Publ'g Co., 513 U.S. 352 (1995) (holding that after-
acquired evidence of an employee's wrongdoing does not bar
liability for discriminatory termination under the Age
Discrimination in Employment Act).

discriminatory reason.

        b.  <u>Rule 52(a)</u>

Plaintiffs' second argument in support of their motion for reconsideration is that the Court's November 2007 ruling failed to satisfy the requirements of Rule 52(a).  Again, Plaintiffs are correct.[17]

        i.  <u>Legal Standard</u>

Rule 52(a) states that "in an action tried on the facts without a jury . . . the court must find the facts specially and state its conclusions of law separately."  Rule 52(c) makes clear that a judgment on partial findings must be supported by the "findings of fact and conclusions of law" required by Rule 52(a).

The mandates of Rule 52(a) have an importance beyond whether a court correctly decides the merits of a case.  See <u>Lemelson v. Kellogg Co.</u>, 440 F.2d 986, 988 (2d Cir. 1971) (internal quotations and citations omitted) (Rule 52 "aids the appellate court by affording it a clear understanding of the ground or

---

[17] Under most circumstances, a court need not reconsider a ruling in order to remedy its failure to adhere to Rule 52(a). Instead, a court could simply amend its findings, take additional findings, and/or alter its judgment, pursuant to Rules 52(b) and 59(e).

    Because I was not the judge presiding at trial in this particular case, I am unable to further clarify the Court's November 2007 ruling.  I do not know – because the record does not make clear – which claims were dismissed on what basis, and with regard to Plaintiffs' § 235(f) claim, why it was dismissed at all.  Accordingly, I conclude that reconsideration of Defendant's motion for judgment on partial findings is the more appropriate remedy under these circumstances.

basis of the decision of the trial court . . .; it makes definite
what was decided by the case . . . ; and it serves to evoke care
on the part of the trial judge in ascertaining the facts.").
Accordingly, upon appellate review, a district court's failure to
properly make findings of fact and conclusions of law pursuant to
Rule 52(a) can be an independent cause for remand that is
entirely separate from the merits of the decision.  See Davis v.
N.Y. City Hous. Auth., 166 F.3d 432, 436-37 (2d Cir. 1999); see
also H. Prang Trucking Co. v. Local Union No. 469, 613 F.2d 1235,
1238 (3d Cir. 1980).

ii.  Application

In its November 2007 ruling, the Court made almost no
findings of fact and only cursory conclusions of law.  These
conclusions of law lacked essential detail, such as which claims
were decided on what basis, and what legitimate,
nondiscriminatory reason the Court found for Defendant's action.
The Court stated no reasons at all for its dismissal of
Plaintiffs' § 235(f) claim.

The Court finds that this failure to fulfill the mandate of
Rule 52(a) weighs in favor of reconsideration of Defendant's
motion for judgment on partial findings.

3.  Conclusion

Because the Court overlooked controlling law and data in
making its November 2007 ruling, and also because the ruling

26

failed to adequately adhere to the mandates of Rule 52(a), the
Court finds that reconsideration of Defendant's motion for
judgment on partial findings is warranted.  The Court grants
Plaintiffs' motion for reconsideration, and similarly grants
Plaintiffs' motions for additional findings and to amend or alter
the judgment, in accordance with the findings and conclusions set
forth in this Order.

    C. <u>Motion for Judgment on Partial Findings</u>

    Upon reconsideration, the Court again concludes, although
for different reasons, that Defendant's motion for judgment on
partial findings should be granted.

        1. <u>Legal Standard</u>

    A judgment on partial findings pursuant to Rule 52(c)
permits a district court to enter judgment before the end of a
non-jury trial on any claim, provided "the court has decided
against the party on a particular issue; the claim cannot be
maintained or defeated absent a favorable finding on that issue;
and the party has been fully heard with respect to that issue."
Moore et al. ¶ 52.50[1].  Judgment on partial findings may be
rendered when "the party pursuing the claim has failed to
demonstrate the elements of the claim in fact or has failed to do
so in law," or when "the evidence of the party pursuing the claim
has established one of the opposing party's defenses as a matter
of fact or law."  Moore et al. ¶ 52.50[2].

27

When issuing a judgment on partial findings the trial judge is not required to draw any special inferences in favor of the non-moving party.  A trial judge must evaluate and weigh all the evidence, make determinations regarding credibility, and resolve the case on the basis of the preponderance of the evidence.[18] Moore et al. ¶ 52.51.

> 2.  Application

> > a.  Section 1981 and Section 3604 Discrimination Claims

> > > i.  Legal Standard

Claims of housing discrimination pursuant to § 3604 and § 1981 are evaluated using the McDonnell Douglas burden-shifting framework.  See Mitchell v. Shane, 350 F.3d 39, 47 (2d Cir. 2003) (applying McDonnell Douglas framework to a § 3604 claim); Lindsay v. Yates, 498 F.3d 434, 438-39 (6th Cir. 2007) (applying McDonnell Douglas framework to a § 1981 claim).

Under this framework, a plaintiff must first establish a prima facie case of discrimination.  To do so, she must show that (1) she is a member of a statutorily protected class (2) who applied for and was qualified to rent or purchase housing and (3)

---

[18] In reconsidering Defendant's motion for judgment on partial findings, I keep in mind that I was not the judge presiding at trial and that I am unable to weigh the credibility of the witness.  I will therefore not grant judgment against Plaintiffs on any claim, if doing so would require a determination of the witness's credibility.

was rejected (4) although the housing remained available.  Soules
v. U.S. Dep't of Hous. and Urban Dev., 967 F.2d 817, 822 (2d Cir.
1992).  If the plaintiff is successful, the burden shifts to the
defendant to show that the rejection was motivated by a
legitimate, non-discriminatory reason.  Id.  The burden then
shifts back to the plaintiff to show that the alleged legitimate,
non-discriminatory reason is pretext.  Id.

ii.  Application

Plaintiffs argue that they introduced sufficient evidence at
trial to establish a prima facie case of housing
discrimination.[19]  (Supp. Mem. 18-20.)  The Court disagrees, and

_____

[19] In addition to arguing that they established a prima
facie case of discrimination with indirect evidence under a
McDonnell Douglas framework, Plaintiffs also argue that they
submitted sufficient direct evidence of discrimination to sustain
their burden of proof.  See Fullard v. City of New York, 274 F.
Supp. 2d 347, 354 (S.D.N.Y. 2003) (noting that the McDonnell
Douglas framework is used "primarily in situations where the
evidence of discrimination is circumstantial," and not in
situations where there is direct evidence of discrimination).
Plaintiffs claim that Defendant's comment regarding the absence
of a father's name on their child's birth certificate is "direct
evidence of animus based on . . . familial status."  (Supp. Mem.
20.)  The Court disagrees, and concludes that a circumstantial
evidence analysis, using the McDonnell Douglas framework, is the
more appropriate method for addressing Plaintiffs' claims in the
instant case.
    Plaintiffs' direct evidence argument raises an important
issue.  Plaintiffs seem to believe that if Defendant rejected
Christoforou because his name was not on his child's birth
certificate, Defendant therefore discriminated against Plaintiffs
because of their "familial status."  The Court is not convinced
that a rejection based on such a reason would constitute
discrimination on the basis of "familial status."
    Familial status is defined under § 3604 as "one or more
individuals (who have not attained the age of 18 years) being

29

finds that Plaintiffs failed to establish that Christoforou was qualified.

In their briefing, Plaintiffs argue that they satisfied the qualification element of a prima facie case of discrimination by introducing evidence at trial that Christoforou made "$30,000 in income" annually and that "three persons (including two adults and a child) were to occupy the apartment." (Supp. Mem. 20.) Plaintiffs are wrong. This anemic listing of evidence, even if an accurate representation of the record, would be insufficient to prove that Christoforou was qualified. Plaintiffs' representation of the record, however, is in fact highly selective and is inaccurate.

First, as a threshold matter, because Plaintiffs failed to introduce evidence as to what the relevant qualifications are, they failed to show that Christoforou was qualified. As already

---

domiciled with . . . . a parent or another person having legal custody of such individual or individuals." 42 U.S.C. § 3602(k). Courts have consistently treated the prohibition against discrimination on the basis of familial status as referring to discrimination based on whether a child is present in the home. See, e.g., Soules, 967 F.2d at 817. The Court has found no decisions addressing, and Plaintiff does not brief, the question of whether familial status discrimination might also encompass discrimination based on the perceived lack of a parental relationship between an adult and a child, or more broadly, based on animus towards certain "non-traditional" family types. Because Plaintiffs have failed to establish that "familial status" should be read this broadly, the Court finds that a direct evidence analysis is inappropriate. The Court therefore evaluates Plaintiffs' claims using the McDonnell Douglas framework.

noted above, Plaintiffs never introduced into evidence or asked the Court to take judicial notice of the income requirements governing applications for Mitchell-Lama housing.  Absent such evidence, the Court is unable to find that Plaintiffs established that Christoforou was qualified.

Second, contrary to their representations, Plaintiffs did not establish that Christoforou's income was $30,000 a year. Therefore, even assuming, _arquendo_, that the Court retroactively took _sua_ _sponte_ judicial notice of the Mitchell-Lama income requirements,[20] the Court would still find that Plaintiffs failed to sufficiently establish that Christoforou met those requirements.

At trial, Christoforou never directly testified to his income at the time of his application; he testified only that he had _stated_ on his application that his annual income was $30,000. (Tr. 25:20-22.)  Christoforou also testified that he was the sole corporate owner of three residential buildings, from which he earned, at minimum, rents of $22,800, $100,000, and $90,000 a year, respectively.  (Tr. 21:23-22:14.)  Plaintiffs did not explain, nor call an expert witness to explain, how a corporate

---

[20] In their briefing, Plaintiffs state in a footnote, lacking any citation, source, attribution, or explanation, that the Mitchell-Lama "income eligibility limit for three people effective April 2003" was $56,500.  (Supp. Mem. 4.)  For this limited portion of the Court's analysis, the Court assumes, _arquendo_, that $56,500 is the income limit that would have governed Christoforou's application.

31

income of over $200,000 a year might translate into a personal income of less than the amount Plaintiffs claim is the relevant income eligibility limit, $56,500.  Plaintiffs also did not submit Christoforou's application, his tax returns, Alcala's tax returns, or any other supporting documentation into evidence.

For all of these reasons, the Court concludes that Plaintiffs failed to sustain their burden of proof at trial.  The Court grants Defendant's motion for judgment on partial findings on Plaintiffs' claims of discrimination pursuant to § 3604 and § 1981.

### b.   Section 235(f)[21]

#### i.   Legal Standard

Section 235(f) states that "[i]t shall be unlawful for a landlord to restrict occupancy of residential premises, by express lease terms or otherwise, to a tenant or tenants or to such tenants and immediate family.  Any such restriction in a lease or rental agreement . . . shall be unenforceable as against public policy."

#### ii.   Application

---

[21] The Court declines to remand Plaintiffs' § 235(f) state law claim to New York state court post-trial.  See Adams v. Suozzi, 517 F.3d 124, 129 (2d Cir. 2008) (if the dismissal of federal claims "occurs late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair.  Nor is it by any means necessary.").

Based on a plain language reading of the statute, the Court finds § 235(f) inapplicable to the instant case.  Section 235(f) expressly governs the terms to which a landlord may subject a tenant in her lease, and deems prohibited lease terms unenforceable as contrary to public policy.

Here, because Christoforou never entered into a lease agreement with Defendant, he was never Defendant's tenant.  He was an applicant, and not a resident, to purchase, and not to rent, an apartment in Defendant's building.  Plaintiffs present no decisions holding that § 235(f) protects or provides relief to applicants for housing, and the Court knows of no such decisions.  On the contrary, the only decision that this Court has found analyzing § 235(f) as applied to applicants ruled that § 235(f) was inapplicable.  <u>Hoy</u>, 698 N.Y.S.2d at 385 (finding § 235(f) inapplicable to an action by a cohabitating couple alleging that their application for housing had been denied because of marital status discrimination).

Accordingly, the Court grants Defendant's motion for judgment on partial findings on Plaintiffs' § 235(f) claim.

D.   <u>Remaining Motions</u>

Plaintiffs also move for a new trial, pursuant to Rules 59 and 61, and to amend their Complaint post-judgment, pursuant to Rule 15.

Upon reconsideration of Defendant's motion for judgment on

partial findings, the Court has concluded that all of Plaintiffs'
claims should be dismissed.  There are no further errors on the
record that require remedy.  To give Plaintiffs a new trial under
these circumstances would be to give them the "proverbial second
bite at the apple."  See LiButti v. U.S., 178 F.3d 114, 118-19
(2d Cir. 1999).  The Court denies Plaintiffs' motions for a new
trial and to amend their Complaint.

III.  Conclusion

For the reasons stated above, the Court GRANTS Plaintiffs'
motion for reconsideration, GRANTS Defendant's motion for
judgment on partial findings, DENIES Plaintiffs' motion for a new
trial, and DENIES Plaintiffs' motion to amend (D.E. 54).

The Court's November 2007 ruling is vacated, and the entry
of judgment is hereby altered and amended in accordance with this
Order.  The Clerk of the Court is directed to close this case.
Any pending motions are moot.

SO ORDERED.

Dated:    New York, New York
          March 13, 2009

                              _____
                              Kimba M. Wood
                              United States District Judge

34